UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAD JOSEPH BAKER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:17-cv-0266 DB<br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] Plaintiff's motion argues, in part, that the Administrative Law Judge's treatment of the medical opinion evidence and plaintiff's testimony constituted error. For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for the payment of benefits.

PROCEDURAL BACKGROUND

On June 4, 2015, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 10 & 16.)

1

("SSI") under Title XVI of the Act alleging disability beginning on February 15, 2015. (Transcript ("Tr.") at 254-269.) Plaintiff's alleged impairments included seizures, a torn rotator cuff, anxiety, and short-term memory loss. (Id. at 104.) Plaintiff's applications were denied initially, (id. at 186-91), and upon reconsideration. (Id. at 197-202.)

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on July 22, 2016. (Id. at 54-80.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 54-56.) In a decision issued on August 30, 2016, the ALJ found that plaintiff was not disabled. (Id. at 47.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since February 15, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: status post right shoulder surgery, epilepsy, anxiety disorder and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is able to climb stairs occasionally and is restricted from reaching overhead with the right upper extremity. He must avoid work at heights or around moving machinery. He can understand, remember and perform simple, routine instructions and maintain concentration, persistence and pace for simple job tasks with no interaction with the public.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on April 1, 1964 and was 50 years old, which is defined an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

2

> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from February 15, 2015, through the date of this decision (20 CFR 404.1502(g) and 416.920(g)).

(Id. at 36-46.)

On December 9, 2016, the Appeals Council denied plaintiff's request for review of the ALJ's August 30, 2016 decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on February 7, 2017. (ECF No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts the following three principal claims: (1) the ALJ's treatment of the medical opinion evidence constituted error; (2) the ALJ improperly rejected plaintiff's testimony; and (3) the ALJ erred at step five of the sequential evaluation.[2] (Pl.'s MSJ (ECF No. 17-1) at 11-22.[3])

I. Medical Opinion Evidence

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or non-examining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion

---

[2] The court has reordered, and grouped, plaintiff's claims for purposes of clarity and efficiency.

[3] Page number citations such as this one, are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

### A. Dr. William Jornlin

Plaintiff first challenges the ALJ's treatment of the opinions offered by Dr. William Jornlin, a treating physician. (Pl.'s MSJ (ECF No. 17-1) at 12-13.)

#### 1. April 2015

The ALJ's decision noted that in April of 2015, Dr. Jornlin completed a Medical Source Statement that addressed plaintiff's physical and mental capacity. (Tr. at 42.) The ALJ's decision also recounted in detail the various degrees of impairment and restrictions of activities found by Dr. Jornlin. For example, the ALJ noted that Dr. Jornlin's April 2015 opinion found that plaintiff was markedly impaired in overall social functioning, in understanding, remembering, and carrying out complex instructions, in maintaining concentration, attention and persistence for extended periods of time, and in completing a normal workday/workweek without interruptions from psychologically based symptoms. (Id.) Dr. Jornlin also found that plaintiff was moderately limited in understanding, remembering and carrying out simple instructions, in

making simple work-related decisions, and was extremely limited in accepting instructions and responding appropriately to criticism from supervisors. (Id. ) Dr. Jornlin also provided an opinion on plaintiff's physical limitations. (Id.)

With respect to the treatment of Dr. Jornlin's April 2015 opinion, the ALJ's decision stated:

> Dr. Jornlin's opinion of April 2015 was considered and it is noted that lifting, carrying capacity, and the restriction as to use of the right upper extremity for reaching are consistent with the findings of record, but there are not objective findings reported to substantiate his other limitations. It appears that his opinion is based upon subjective reports only. As specified by the doctor, it remains unclear if symptoms are related to bipolar disorder or seizure disorder; therefore, it is assigned no weight.

(Id.)

"Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017); see also Poulin v. Bowen, 817 F.2d 865, 873 (D.C. Cir. 1987) ("unlike a broken arm, a mind cannot be x-rayed").

Moreover,

> [t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

Here, the ALJ failed to provide any support for the assertion that Dr. Jornlin's opinion was based upon subjective reports. Dr. Jornlin was plaintiff's treating physician and treated plaintiff for epilepsy, shoulder pain, and mental health issues. (Tr. at 493-96, 555-61.) Dr. Jornlin's treatment notes reflect Dr. Jornlin's findings, diagnosis, and treatment strategies.

It is true, that Dr. Jornlin acknowledged that it was "unclear how much of [plaintiff's symptoms are related to] epilepsy and how much is an undiagnosed bipolar disorder." (Id. at

6

555.) That acknowledgement, however, provides no support for finding Dr. Jornlin's opinion as to plaintiff's functional limitations is entitled to no weight. Regardless of their origin, Dr. Jornlin was opining as to the limitations plaintiff experienced.

## 2. September 2015

In September of 2015, Dr. Jornlin completed a Verification of Physical or Mental Incapacity form. (Id. at 619, 668.) The form stated that Dr. Jornlin found that plaintiff would be unable to work for one year due to plaintiff's seizure disorder. The ALJ also afforded this opinion "no weight." (Id. at 43.) The ALJ based this determination on essentially three findings.

First, the ALJ asserted that there was "no evidence of seizure activity in the medical evidence of record[.]" (Id.) The record, however, reflects that plaintiff has been diagnosed and treated for epilepsy, and that plaintiff's license was revoked due to seizures. (Id. at 303, 493.) The ALJ's decision in fact found that plaintiff's epilepsy was a severe impairment. (Id. at 36.)

Second, the ALJ asserted that the September 2015 opinion was "contrary to his reported opinion of April 2015." (Id. at 43.) The ALJ, however, provided no explanation for how the opinion was contrary or why that means Dr. Jornlin's September 2015 opinion should be afforded no weight.

Third, the ALJ asserted that the form was "just a conclusion that the claimant was unable to work," did not include "any specific limitations," and that "conclusionary statements are reserved for the commissioner[.]" (Id. At 43.) However, "In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)).

It is well-established that an ALJ may not "simply reject a treating physician's opinions on the ultimate issue of disability." Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014); see also Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012) ("Dr. Johnson's statement that Hill would be 'unlikely' to work full time was not a conclusory statement like those described in 20 C.F.R. § 404.1527(d)(1), but instead an assessment, based on objective medical evidence, of Hill's likelihood of being able to sustain full time employment given the many medical and

mental impairments Hill faces and her inability to afford treatment for those conditions.").

Accordingly, the court finds that the ALJ failed to offer specific and legitimate, let alone clear and convincing, reasons supported by substantial evidence in the record for rejecting Dr. Jornlin's opinions.

B. Dr. Rajiv Pathak

Plaintiff argues that "the ALJ did not properly evaluate Dr. Pathak's medical opinions[.]" (Pl.'s MSJ (ECF No. 17-1) at 13.) However, what plaintiff characterizes as medical opinions, are instead Dr. Pathak's treatment/progress notes. (Tr. at 518, 674.) Those records do not reflect an opinion as to plaintiff's limitations or the ultimate issue of disability. See Orn v. Astrue, 495 F.3d 625, 634 (9th Cir. 2007) ("The primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations."). And the ALJ's decision did address Dr. Pathak's evidence. (Id. at 41.)

Accordingly, the court finds no error with respect to the treatment of Dr. Pathak's treatment/progress notes.

C. Dr. Deborah Schmidt

Dr. Deborah Schmidt, a licensed psychologist, examined plaintiff on May 26, 2016. (Id. at 732.) Dr. Schmidt's examination included a clinical interview, mental status examination, review of records, Trails A, Trails B, Wechsler Adult Intelligence Scale IV, and the Wechsler Memory Scale. (Id.) Dr. Schmidt issued a Psychological Disability Evaluation that spanned seven pages. (Id. at 732-38.) The ALJ's decision summarized Dr. Schmidt's evaluation, stating:

> She opined a mild neurocognitive disorder, major depressive disorder, generalized anxiety disorder and borderline intellectual functioning per current test results. She established a Global Assessment of Functioning of 55. Such a score is indicative of an individual who has moderate impairment in social and occupational functioning.

(Id. at 43.)

Dr. Schmidt also completed a Medical Source Statement as to plaintiff's residual functional capacity. The ALJ's decision recounted, at length, the limitations assessed by Dr. Schmidt, stating:

8

> . . . she assessed mild impairment in conducting activities of daily living, in making simple work related decisions and in asking simple questions or requesting assistance; moderate impairment in remembering locations and work-like procedures, in understanding, remembering and carrying out simple instructions, in performing activities within a schedule, in maintaining regular attendance, in being punctual within customary tolerances, in completing a normal workday/workweek without interruptions from psychologically based symptoms, in performing at a consistent pace without an unreasonable number and length of rest periods, in sustaining an ordinary routine without special supervision, in responding appropriately to changes in work settings and in interacting appropriately with the general public; and marked impairment in overall social function, in understanding, remembering and carrying out complex instructions, in maintaining concentration, attention and persistence for extended periods, in working in coordination with and in proximity with others without being distracted by them, in getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and in accepting instructions and responding appropriately to criticism from supervisors.

(Id.)

Despite the length and detail of Dr. Schmidt's evaluation and opined limitations, the ALJ elected to afford "little weight" to Dr. Schmidt's opinion. (Id. at 44.) In support of this determination, the ALJ stated simply:

> Dr. Schmidt's . . . marked limitations are not consistent with her own report that indicates that the claimant can follow simple instructions and is able to concentrate on test items and testing. The claimant did become frustrated with some test tasks, but a limitation to simple work would accommodate his limitations. Therefore, her opinion is assigned little weight.

(Id. at 43-44.)

The vague and conclusory assertion that Dr. Schmidt's marked limitations are not consistent with her own report cannot serve as a specific and legitimate reason for affording little weight to Dr. Schmidt's opinion with respect to plaintiff's moderate limitations. In this regard, Dr. Schmidt found that plaintiff was moderately impaired in the ability to remember work-like procedures, understand, remember, and carry out simple instructions, maintain regular attendance, complete a normal workday and work week without interruptions from symptoms, sustain an ordinary routine without special supervision, and respond appropriately to changes in a work setting. (Id. at 726.)

9

Moreover, there is nothing inconsistent about Dr. Schmidt's opined marked limitations. Dr. Schmidt opined that plaintiff was markedly impaired in the ability to socially function, understand, remember and carry out complex instructions, maintain concentration, attention, and persistence for extended periods, work with others without being distracted, get along with coworkers, and accept instructions and respond appropriately to criticism from supervisors. (Id. at 726.)

That is consistent with Dr. Schmidt's evaluation which found that, although plaintiff possessed the "intellectual ability to carry out and understand mostly simple instructions and tasks":

> His scores on the WMS-IV suggest that he is exhibiting significant auditory and visual memory difficulties, which likely would interfere with his ability to perform various tasks in a work setting. Mr. Baker became frustrated when completing some of the testing, however, and was very irritable. Mr. Baker tended to become easily overwhelmed during the testing and became confused several times when presented with information. His performance during the testing suggests that he therefore may have difficulty remaining consistently emotionally and socially appropriate in a work setting when presented with various stressors, change, conflict, or confrontation.

(Id. at 737.)

Accordingly, the court finds that the ALJ failed to offer a specific and legitimate, let alone clear and convincing, reason supported by substantial evidence in the record for rejecting Dr. Schmidt's opinion.[4]

### D. Therapist Susan Cirillo

Plaintiff argues that the ALJ failed to consider the opinion of plaintiff's therapist Susan Cirillo.[5] (Pl.'s MSJ (ECF No. 17-1) at 17.) Defendant argues that the ALJ "actually did refer to

---

[4] As noted by the plaintiff, not only did the ALJ erroneously reject the opinion of a treating and examining physician, but the ALJ elected to afford more weight to the opinions of non-examining physicians. (Tr. at 44.) "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831.

[5] In addition to evidence from acceptable medical sources, a plaintiff may offer opinions from "other sources" to establish the severity of impairments. See 20 C.F.R. §§ 404.1513(d), 416.913(d). It is not clear, however, that therapist Cirillo provided an opinion as to plaintiff's limitations or impairment.

10

Ms. Cirillo's findings[.]" (Def.'s MSJ (ECF No. 20) at 18.) In support of this assertion defendant cites to a page of the ALJ's decision, transcript page 41.

It is not at all clear, however, from reading that page that the ALJ did consider Ms. Cirillo's treatment record. At least, not explicitly in the ALJ's decision. "The ALJ must consider all evidence in the claimant's case record to determine disability." Moller v. Astrue, 13 F.Supp.3d 1032, 1038 (N.D. Cal. 2012); see also Robbins v. Social Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."). Accordingly, the court finds that the ALJ's decision failed to address the evidence from plaintiff's treating therapist.

For the reasons stated above, the court finds that the ALJ's treatment of the opinions of Dr. Jornlin and Schmidt, and the evidence from therapist Cirillo, constituted error.[6]

II. Plaintiff's Testimony

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

---

[6] As noted above, although plaintiff's motion is granted as to the claim that the ALJ's treatment of the medical opinion evidence constituted error, the court finds no error with respect to the ALJ's treatment of Dr. Pathak's opinion.

11

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained" in the decision. (Tr. at 40.) The ALJ then went on to generally discuss the lack of evidence to support plaintiff's testimony.

For example, the ALJ found that although plaintiff claimed that "his right shoulder has not improved with surgery, this contention is contrary to the medical evidence of record[.]" (Id. at 41.) The ALJ also noted that plaintiff's "seizure activity is controlled by a medication regimen." (Id.) Moreover, "[a] medical status evaluation was performed in March 2016 and showed normal appearance and grooming, normal speech and behavior, normal thought process and thought

content." (Id.)

However, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); see also Perez v. Astrue, 247 Fed. Appx. 931, 936 (9th Cir. 2007) ("That the degree of Perez's subjective complaints were not corroborated by the objective clinical findings in the ALJ's view was of no legal moment because pain is inherently an individual phenomenon."); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings.").

In this regard, the ALJ's analysis and finding stem from error. Moreover, plaintiff's testimony would find support from the opinion evidence erroneously rejected by the ALJ. Therefore, the court finds that the ALJ failed to offer clear and convincing reasons for rejecting plaintiff's testimony. Accordingly, plaintiff motion for summary judgment is also granted as to the claim that the ALJ's treatment of plaintiff's testimony constituted error.

III.   Step Five Error

At step five of the sequential evaluation, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations.'" Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)) (alterations omitted). The ALJ can meet her burden by either taking the testimony of a Vocational Expert ("VE") or by referring to the grids. See Lounsburry v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006). Here, plaintiff argues that the ALJ failed to satisfy this burden because the ALJ failed to afford the appropriate weight to the opinions of Dr. Jornlin and Dr. Schmidt. (Pl.'s MSJ (ECF No. 17-1) at 21.) And plaintiff is correct.

While an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the

ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final residual functional capacity assessment, ("RFC"), must account for all of the limitations and restrictions of the particular claimant. Bray, 554 F.3d at 1228.

"If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted); see also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").

Here, the ALJ's hypothetical to the VE did not account for the limitations found in Dr. Jornlin's and Dr. Schmidt's opinions. Nor did it account for the limitations found in plaintiff's testimony. (Tr. at 77-79.) Accordingly, the ALJ did not satisfy the step five burden. Plaintiff is, therefore, also entitled to summary judgment on the claim that the ALJ erred at step five of the sequential evaluation.

## CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015)

("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the opinions of the doctors who have either treated or examined plaintiff, as well as plaintiff's testimony, are consistent. When the VE was asked a question consistent with the limitations found by that evidence, the VE answered that there were no jobs for an individual so limited. (Tr. at 78-79.) In this regard, the court finds that the record has been fully developed and further administrative proceedings would serve no useful purpose, the ALJ has failed to provide legally sufficient reasons for rejecting evidence, and if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 20) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for the immediate award of benefits; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: August 30, 2018

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\baker0266.ord

15